LAWRENCE M. MARTIN, ET AL.

V.

JOHN H. TERJELIAN

Record No. 830710

June 13, 1986

Present: All the Justices

*J. Grady Monday (Monday & Monday*, on brief), for appellants.

*Tyler E. Williams, III (Baker & Williams*, on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

John H. Terjelian filed his motion for judgment in the trial court to recover from Lawrence M. Martin and Marie R. Martin, his wife, the sum of $10,000 Terjelian allegedly paid to them under an unconsummated verbal agreement for the purchase of real estate. In their grounds of defense, the Martins asserted that Terjelian had forfeited the payment of $10,000 as liquidated damages for his breach of an executed written contract between the parties. The Martins also filed a counterclaim seeking damages in the sum of $28,500 for breach of the written contract.

The trial court, sitting without a jury, ruled that the $10,000 payment was not paid under the written contract, that Terjelian was entitled to recover the payment, and that the Martins were not entitled to recover damages under their counterclaim. Judgment was granted in favor of Terjelian, by order entered February 9, 1983, with interest from the date of judgment. On appeal, the Martins argue that the trial court misconstrued the written contract.

The written contract, effective January 28, 1980, was executed by Terjelian, the Martins, and a representative of Strout Realty, Inc., on a Strout Realty printed form. Terjelian agreed to purchase and the Martins agreed to sell a tract of 198 acres, with improvements, and a tobacco allotment of 7,336 pounds owned by the Martins in Charlotte County. The purchase price was $170,000, $1,500 "deposited herewith," and the balance of $168,500 payable in cash or by certified check at closing on or before September 1, 1980. The contract provided that if the buyer defaulted, "all money paid thereunder shall, at the option of the seller, be forfeited to the seller as liquidated damages." Terjelian paid to Strout Realty the $1,500 deposit in two checks. Under the terms of the contract, upon default by the purchaser, Strout Realty was entitled to one-half the deposit and the Martins were entitled to the other one-half.

Several months after the contract was executed, Terjelian approached the Martins about alternative financing. He suggested

that an installment sale, under which he would pay 29% of the total purchase price by the time of closing in September and the balance in January of 1981, would enable the Martins to save on income taxes payable on the sale. Terjelian testified that he thought that he and Lawrence Martin had an agreement on these revised terms and therefore, at Martin's request, he mailed him a check dated June 2, 1980, for $10,000 as part of the agreement. The check, introduced as an exhibit, was designated "toward purchase 198 acres Rte 2 Box 86 Charlotte C.H. Va. 23923." The Martins signed and sent to Terjelian a receipt dated June 5, 1980, for the $10,000 payment marked "Non-refundable deposit" on the 198-acre farm.

The Martins had their attorney prepare a written contract dated June 16, 1980, for an installment sale of the property in accordance with their understanding. The contract, introduced as an exhibit, provided that the consideration was $170,000, of which $10,000 had been paid, $39,000 was payable on September 1, 1980, interest was payable monthly, and the balance was payable January 2, 1981. The contract also provided that, if Terjelian defaulted, the Martins could retain all payments made on the contract as liquidated damages. When this contract, executed by the Martins, was sent to Terjelian at his address in Fairfax County, he found it defective in several respects. It failed to show his deposit of $1,500 under the January 1980 contract and it failed to cover improvements, the tobacco allotment, and real estate commissions. Accordingly, Terjelian had his attorney revise the contract to include the omitted items, but this proposed contract was never executed.

Terjelian continued his efforts to obtain financing through various sources but in September he found that outside financing was not available. In October, he offered the Martins an additional deposit of $63,500, which would increase the deposits to $75,000, if they would permit him to pay the balance by January 1, 1981. The Martins refused this offer. By letter of October 10, they notified Terjelian that unless the sale under the January 1980 contract was closed by October 17, they would consider the contract to be null and void. By letter of October 30, the Martins notified Terjelian that because he had failed to fulfill the contract they declared his deposits forfeited as liquidated damages under the terms of the contract.

Terjelian concedes that he breached the January contract and that the Martins could properly retain the $1,500 deposit as liquidated damages. He contends, however, that the $10,000 deposit was made in anticipation of a new contract which was never executed and that the Martins could not retain this deposit.

The Martins in their testimony sought to establish that Terjelian's $10,000 deposit was merely an additional deposit under the January contract. They acknowledged the negotiations initiated by Terjelian for an installment sale, but they asserted that Terjelian volunteered to send them a check for $10,000, which they needed to purchase other property, because he realized his earlier deposit of $1,500 was too low. Marie Martin testified, however, that she was "highly surprised" at Terjelian's action and wondered why he did not pay this "on the original contract." Moreover, Lawrence Martin conceded that he had spent the $10,000 deposit on farm expenses and that Strout Realty had made no claim for one-half the deposit.

We agree with the conclusions of the trial court. The January contract called for a deposit of only $1,500, and this amount was paid. Upon Terjelian's default, the Martins could declare the deposit forfeited, and they did so. Contrary to the Martins' oral argument before us, the trial court did not hold that they had breached the contract. No one has ever suggested that they defaulted. They had the option of declaring the contract void upon Terjelian's admitted breach and of retaining as liquidated damages the deposit made thereunder. They elected to exercise this option.

The evidence supports the finding of the trial court that the $10,000 deposit was not made under the January contract. Under the proposed new installment-sale contract, as shown by the draft agreement signed by the Martins, a deposit of $10,000 was required. But the new contract was never executed. Therefore, Terjelian was entitled to repayment of the $10,000 deposit made in anticipation of the proposed contract. His acceptance of the receipt, which he had not requested, does not change the status of the deposit. The receipt did not refer to the deposit of $1,500 made under the January contract. Terjelian testified that, although he considered the language of the receipt "highly unusual," he did not discuss it with the Martins because he expected to purchase the property. If the purchase had been consummated under the proposed contract, the deposit would have been applied

to the purchase price. Terjelian testified that he had his attorney request repayment of the $10,000 deposit before he received the forfeiture letter from the Martins.

Having elected to accept as liquidated damages the deposit made under the January contract, the Martins were properly held to their election. Although they introduced evidence tending to show a diminution in value of the property, the trial court properly held that the Martins, having received liquidated damages, could not obtain damages under their counterclaim.

We will affirm the judgment of the trial court.

*Affirmed.*